GARDNER and another, Respondents, vs. WILBER and another, Appellants.

75    601
53 LRA 530n

*January 11 — January 28, 1890.*

*Logs and lumber: Quantity: Evidence.*

1. The question being as to the quantity of lumber contained in certain logs which a lumber inspector had scaled at 196,650 feet, the evidence — showing, among other things, that the parties themselves, having ample opportunity to examine the logs, had estimated them to contain about 1,000,000 feet, and that such estimate was confirmed by the mill scale of the mill where they were afterwards sawed — is *held* to sustain findings of the jury that there was gross error or fraud in the scale of the inspector, and that the logs in fact contained 986,304 feet.

2. Entries of the mill scale, made daily by the mill-owner in the mill book from the original figures of the scaler — their accuracy having been confirmed by the plaintiffs paying for the sawing of the quantity they indicated, and by other testimony — were competent evidence of the quantity of lumber cut from the logs.

3. The plaintiffs having, through their expert agent, estimated the logs to contain about 1,000,000 feet, were not prejudiced by the admission of the testimony of other experts who estimated the quantity at the same figure.

APPEAL from the Circuit Court for *Price* County.

The parties entered into a contract in writing, dated April 28, 1888, in and by which the defendants sold to the plaintiffs "all the logs owned by them and situated on the right of way of the Wisconsin Central Railroad Company

near Knight's siding in Ashland county, said logs being one million feet, more or less, board measure," for $4 per thousand feet; $2,000 to be paid down, the balance "upon the day such logs are scaled by the scaler to be mutually agreed upon by the parties hereto, and, if a scaler cannot be determined upon, the district scaler shall scale the logs." The logs were on roll-ways, and were examined before the contract was executed by the agent of the plaintiffs at Ashland, who made the contract on their behalf. The plaintiffs made the advance payment of $2,000 required by the contract.

The parties failed to agree upon a scaler, and the plaintiffs applied to the lumber inspector of the Ashland and Bayfield district (No. 11) to scale the logs. One of his deputies made a scale thereof by the direction and under the general supervision of the inspector. Such scale shows only 196,650 feet of lumber in the logs. Seven thousand two hundred and sixty-five logs were delivered to plaintiffs under the contract. They had them sawed at Sutherland's mill, in Ashland, and took all the lumber cut from them. The deputy inspector rejected 2,307 of these logs as "culled logs," and only scaled the remaining 4,958, as appears by his scale-bill and certificate thereto attached, which were put in evidence by the plaintiffs.

The testimony tends to show that there was cut from these logs, at Sutherland's mill, 1,142,420 feet of lumber, less at least two or three car-loads of 4,000 to 5,000 feet each, procured elsewhere. The direct proof of this was entries of the mill scale of one Chase, made daily from Chase's figures by Mr. Sutherland in his mill books. The entries also show that, of the 1,142,420 feet, 128,320 were graded as "mill culls." These entries represent the quantities for the sawing of which the plaintiffs paid Mr. Sutherland, and there is other testimony tending to show that they are approximately accurate.

The plaintiffs claim that the advance payment to the defendants of $2,000 largely overpaid the latter for the logs, and they brought this action to recover such alleged overpayment. The defendants in their answer deny the validity and accuracy of the inspector's scale, and allege that it is erroneous, and in fraud of their rights, and is wholly wrong and insufficient. They deny that any scale of the logs was made under the contract, and allege that they delivered to plaintiffs logs containing 1,128,669 feet of lumber, board measure, amounting, at the contract price, to $4,514.67. They interpose a counterclaim for the balance of that sum, after deducting therefrom the advance payment of $2,000. The plaintiffs replied to the counterclaim, admitting that they took possession of the logs, and denying all other material allegations therein contained.

The issues thus made were tried by the court and a jury, and a special verdict was returned by the jury, as follows: "(1) In scaling the logs, was the timber inspector or his deputy guilty of any gross error or fraud? *Answer.* Yes. (2) What was the actual number of feet, board measure, of merchantable lumber in the logs delivered by defendants to plaintiffs under the contract herein, and received by plaintiffs? *A.* 986,304." A motion for a new trial was denied, and judgment for defendants entered upon such special verdict for $1,930.23 damages, and for costs. The plaintiffs appeal from the judgment.

For the appellants there was a brief by *Tomkins, Merrill & Smith,* and oral argument by *W. M. Tomkins.*

For the respondents there was a brief by *Jackson & Thompson,* and oral argument by *H. B. Jackson.*

LYON, J. No greater effect can be given to the lumber inspector's scale-bill and certificate, as evidence, than is prescribed in the statute on that subject (R. S. sec. 1735), which makes the same presumptive evidence of the facts

therein contained and of the correctness of such statement or measurement. Being only presumptive evidence of those facts and statements, such scale-bill and certificate may be impeached for mistake or fraud on the part of the inspector in making the same. The jury, under proper instructions, found that the inspector committed gross error or fraud in scaling the logs. If the finding that the logs contained 986,304 feet, board measure, of merchantable lumber, is upheld, it necessarily follows that there must have been gross error or fraud in a scale which fixed the quantity at 196,650 feet, being only one fifth the quantity found by the jury. Hence the vital question in the case is, Does the testimony support the finding of the jury as to the quantity of merchantable lumber contained in the logs? We think this question must be answered in the affirmative.

In the first place, the parties in their contract estimated that the logs contained about 1,000,000 feet of lumber, board measure. The language is, "said logs being one million feet, more or less." The agent of the plaintiffs who made the purchase examined the logs. They were on roll-ways and accessible. They were not covered with snow, and he had ample opportunity to examine them fully. Presumably he did so. He was a lumber expert, and doubtless well qualified to make an approximately accurate estimate of the quantity of lumber which could be cut from the logs. True, they were old logs, and were sap-rotted and worm-eaten, as old logs always or usually are. But the agent knew these facts and, it is reasonable to believe, made his estimate with reference thereto. He knew also that they would produce an inferior quality of lumber, and it is quite apparent that the price was fixed accordingly.

Again, the mill scale showed about 1,000,000 feet of lumber cut from the logs, excluding mill culls. The original figures made by the scaler were not produced, but such scale was entered daily, just as the scaler made it, by Mr.

Gardner and another vs. Wilber and another.

Sutherland in his mill book. Such entries were received as evidence tending to show the quantity of lumber cut from the logs. It is claimed they were incompetent. The amount of sawing done for the plaintiffs by Mr. Sutherland was ascertained from the figures contained in these entries, and the plaintiffs indorsed their accuracy by paying for sawing the amount of lumber which they indicated. There was also considerable other proof of their accuracy. Under these circumstances, we think such entries were competent testimony.

Several lumber experts testified to estimates of these logs, all putting the quantity of lumber they contained at about 1,000,000 feet. It may be that such testimony is incompetent. But inasmuch as the plaintiffs themselves, through their agent, made the same estimate, it is not perceived how they could have been prejudiced by such testimony.

The logs were small, old, sap-rotted, and worm-eaten, and necessarily the lumber cut from them was of inferior quality. We think, however, that the testimony supports the finding that the quantity specified therein was merchantable lumber,— that is to say, merchantable in the grade to which it belonged,— and this is the meaning of the verdict.

Error is assigned upon one or two passages in the charge to the jury. The verdict being special, any general discussion of the case in the charge is of little importance. We think, however, that it contains an accurate statement of the law of the case, and that there is nothing in it of which the plaintiffs can justly complain.

*By the Court.*— The judgment of the circuit court is affirmed.